# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:02 CV-33-MU

| | | |
|---|---|---|
| **DARRELL EUGENE STRICKLAND** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **R.C. LEE, Warden,** | ) | |
| **Central Prison** | ) | |
| **Raleigh, North Carolina** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court upon Petitioner Darrell Eugene Strickland's Motion for a New Trial pursuant to Rule 59(a) and to Alter or Amend Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[Doc. 82]  Rule 59(a) and 59(e) Motions must be filed no more than ten (10) days after entry of the judgment.  Judgment denying Petitioner's Petition for Writ of Habeas Corpus was entered in this matter on January 30, 2007.  Petitioner's Motion is timely filed.  Also before the Court are Petitioner's Motion to Expand the Record filed in conjunction with his Rule 59 Motion [Doc. 83] and his May 17, 2007 Motion for Leave to Conduct Depositions and to Expand the Record [Doc. 94].

*Motion for a New Trial Pursuant to Rule 59(a)*

Petitioner seeks a new trial pursuant to Rule 59(a)(2), which states that,

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States.

Fed. R. Civ. P.  Because this Court did not hold a trial to resolve Petitioners' Petition for Writ of

Habeas Corpus brought pursuant to 28 U.S.C. § 2254, Rule 59(a) is inapplicable.

*Motion to Alter or Amend Judgment Pursuant to Rule 59(e)*

A district court has the discretion to grant a Rule 59(e) motion only in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). While the rule permits a district court to correct its own errors, Rule 59(e) may not be used "to raise arguments which could have been raised prior to the issuance of the judgment." *Id*. (citations omitted). Nor may a Rule 59(e) motion be used to "argue a case under a novel legal theory that the party had the ability to address" prior to judgment being entered. *Id*.

A. *Newly Discovered Evidence*[1]

In his Motion, Petitioner asserts that he has discovered new evidence that would support his claim that the prosecution in his case suppressed material exculpatory or impeaching

---

[1] The Court is aware that two Federal Appellate Courts have issued published opinions treating the movants' Rule 59(e) motions as successive applications for habeas relief under 28 U.S.C. § 2244(b). *See U.S. v. Pedraza*, 466 F.3d 932, 933 (10th Cir. 2006) (*citing Spitznas v. Boone*, 464 F.3d 1213 (10th Cir. 2006) (finding that Rule 59(e) motion was, in part, a successive § 2255 motion for habeas relief); *U.S. v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005) (requiring certificate of appealability for Rule 59(e) motion because the motion "sought ultimately to resurrect the denial of [the] earlier [28 U.S.C.] § 2255 motion"); *but see*, *Curry v. U.S.*, 307 F.3d 664, 666 (7th Cir. 2002) (Since a 59(e) motion does not seek collateral relief, it is not subject to AEDPA's statutory limitations on such relief). The Court also is aware that separate three-judge panels of the Fourth Circuit Court of Appeals have issued unpublished opinions finding that the movants' Rule 59(e) motions were successive motions attacking their convictions and sentences under § 2255. *See U.S. v. Mann*, 141 Fed.Appx. 175 (4th Cir. 2005) (unpublished) (citing *United States v. Winestock*, 340 F.3d 200, 206-07 (4th Cir.) *cert. denied*, 540 U.S. 995, 124 S.Ct. 496, 157 L.Ed.2d 395 (2003).); *U.S. v. Martin*, 132 Fed.Appx. 450 (4th Cir. 2005) (unpublished) (citing *Winestock*, 340 F.3d at 207). However, in light of the split among the circuit courts, and in the absence of a published opinion from the Fourth Circuit, the Court will not treat Petitioner's Rule 59(e) Motion as successive under § 2244(b).

evidence in violation of *Brady v. Maryland*, 373 US 83, 83 S.Ct. 1194 (1963). Specifically, Petitioner alleges that the prosecutor suppressed (and is continuing to suppress or has lost) a handwritten statement by the only eyewitness to the shooting of Henry Brown. An affidavit by Gail Hough, formerly Gail Brown, attached to the Rule 59 Motion as "newly discovered evidence" states that State Bureau of Investigation (hereinafter "SBI") Agents came to her mother's home after the murder and had her write a statement, which she signed and they took away. Although, she does not remember how long the statement was, she states in her affidavit that it was at least four pages. In response to Petitioner's Rule 59(e) Motion, the State has filed in this Court copies of the files of the SBI investigation of the Henry Brown murder and the files of the Union County Sheriff's investigation of the Henry Brown murder. There is no handwritten statement by Gail Brown in either of the files. Additionally, SBI Agent Tony Underwood states by way of affidavit that to his knowledge he was the only SBI agent to interview Gail Brown and that she did not hand-write a statement for him.

According to Petitioner, Gail Brown Hough's affidavit forecasts that the handwritten statement states that Petitioner and Henry Brown were exchanging racial slurs roughly ten minutes before the shooting and that both men were intoxicated on drugs and alcohol. The affidavit further states that Gail was uncomfortable throughout the evening and tried to get her husband to leave because she was afraid a fight might break out. She further stated in her affidavit that things seemed calm just prior to the shooting but that she could not hear what was being said between the two men. She also stated that she heard the shot, looked up and saw her husband fall off the ottoman and that Petitioner was standing behind him with a shotgun.

Petitioner argues that this information is material exculpatory evidence because it

provides support for a diminished capacity or manslaughter defense to first degree murder and, alternatively, support for life imprisonment rather than the death penalty. Petitioner also asserts that the handwritten statement would have allowed trial counsel to impeach Gail Brown, who testified at trial that there was no arguing or fighting between the two men on the night of the shooting.

Finally, Petitioner argues that this information supports what Gail Brown told Ted Keziah, the first officer to arrive after the murder. According to Officer Keziah's Incident/Investigation Report (Pet.'s Exh. 82), Gail stated that Petitioner and the victim were "running there [sic] mouths at one another" prior to the shooting. The state court hearing Petitioner's Motion for Appropriate Relief (hereinafter "MAR") held that the prosecutor did not violate *Brady* when he failed to disclose the Report to the defense because Gail Brown had made no mention to Officer Keziah that the two men were fighting or threatening each other.[2] (MAR Order, Claim V, p. 17) This Court found that because there was no testimony by any witness at trial that the two men were arguing or fighting before the shooting, Petitioner had failed to overcome the presumed correctness of the MAR court's finding of fact that "running there [sic]

---

[2]The MAR court also found that Officer Keziah's Incident/Investigation Report was not discoverable under state law because it did not meet the statutory definition of a "statement." *See* N.C. Gen. Stat. § 15A-903(f)(2) (1995). In his Reply to the State's Response to the Rule 59 Motion, Petitioner asserts that this Court disagreed with the MAR court that Officer Keziah's report was not a discoverable "statement" under state law. [Doc. 95, pp. 2-3]. This assertion mischaracterizes the record. This Court offered no opinion on the MAR court's conclusion that Officer Keziah's report was not a discoverable statement under state law. The Court merely accepted, as it was required to do, the MAR court's ruling on a purely state law matter. *See Roach v. Angelone*, 176 F.3d 210, 217 (4th Cir. 1999) (A state court's decision on a question of state law is binding in federal court). The Court likewise accepted the MAR court's ruling that Agent Tony Underwood's Reports (Pet's Exhs. 83 & 84) were discoverable statements that should have been disclosed to the defense under state law.

mouths at one another" meant something other than fighting or threatening each other. *See* 28 U.S.C. § 2254(e)(1) (A finding of fact by a State court is presumed to be correct absent "clear and convincing evidence" of the contrary).

Under Rule 59(e), the Court has some discretion to consider additional evidence. *See Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). However, if the additional evidence is represented as being unavailable prior to judgment, the Court must satisfy itself as to the unavailability of the evidence and the justification for omission. *See id*. (citing *RGI, Inc. V. Unified Indus., Inc.*, 963 F.2d 658, 662 (4th Cir. 1992).

The State argues that Petitioner is barred from raising this claim post-judgment because he could have raised this issue in the State courts. Specifically, the State points to the facts that Petitioner received pre-trial statements of Gail Brown as well as Officer Keziah's Report during post-conviction discovery and that Petitioner did not call Gail Brown Hough to testify at the MAR hearing. The State's argument appears to be that had Petitioner called Gail Brown Hough to testify at the MAR hearing, the issue of whether she in fact hand-wrote a statement for one or more law enforcement officials could have been resolved at that time and that Petitioner is precluded from raising the issue now.

Petitioner responds that Gail Brown refused to talk to defense counsel prior to trial, so the defense had no way of knowing to whom she had spoken about the crime. Furthermore, in post-conviction, the MAR court ordered the State to produce all of its files relating to the investigation and prosecution of the murder of Henry Brown. Petitioner asserts that when he received copies of the SBI and Union County Sheriff's Office investigative files containing Officer Keziah's Report and Gail Brown's statements to Agent Underwood, he had no reason to believe that the

5

State had not complied fully with the MAR court's Order. For unexplained reasons, habeas counsel began attempting to locate Gail Brown in August 2005, more than three years after Petitioner filed his Petition for Writ of Habeas Corpus in this Court. (Affidavit of Kim Stevens in support of Rule 59 Motion). It was not until several weeks before this Court issued its Order denying habeas relief that counsel located her. Counsel scheduled a visit with Ms. Brown for January 31, 2007. This Court issued its Order denying habeas relief on January 30, 2007. Notwithstanding the Court's Order, habeas counsel visited Gail Brown Hough on January 31, 2007, and it was at that time that she claimed to have hand-written a statement at the request of SBI agents.

The Court is satisfied that the information in Gail Brown Hough's affidavit could not have been discovered prior to judgment. The Court will expand the record to include Gail Brown's Affidavit. Additionally, the Court will expand the record to include SBI Agent Tony Underwood's Affidavit, the SBI Investigative File, Agent Underwood's Case Notes and the Union County Sheriff's Office Investigative File. *See* Rule 7 of the Rules Governing § 2254 Cases.

Petitioner is in the unenviable position of having to urge this Court to accept as credible Gail Brown Hough's affidavit so that he can then use the same information to undermine the credibility of her trial testimony. Be that as it may, for the purposes of the Rule 59(e) Motion, the Court will accept as true the factual assertion in Gail Brown Hough's affidavit that she hand-wrote a statement, signed it and gave it to someone. The Court also will presume that the information in her affidavit is a forecast of the information contained in her handwritten statement, the absence of which is unexplained at this time. The Court will not, however, grant


additional discovery or alter or amend its judgment in this matter.

At trial Gail testified that there was no arguing or fighting between Petitioner and the victim and that the only reason that she wanted to go home was because her son had to go to school the next day. The entire tenor of her testimony was that the atmosphere in the house was jovial and relaxed. She now says that the two men were drunk and high and exchanging racial slurs ten minutes prior to the shooting and that she was uncomfortable and wanted to go home because she thought a fight might break out. She states further that at times things were heated between the two men. She also seems to indicate that she did not witness the actual shooting whereas at trial she testified that she was looking at the two men when the shooting occurred.

This Court is not convinced that had this additional information been available to defense counsel there is a reasonable probability that Petitioner would not have been convicted of first-degree murder or sentenced to death. *See Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (Prejudice under *Brady* requires a showing that "there was a reasonable probability" that the result of the trial would have been different if the suppressed evidence had been disclosed to the defense.). As an initial matter, Gail's statement that the two men were drunk and high is not new evidence. Both she and Sherry Strickland testified that the two men had been drinking all evening and that they had smoked marijuana. While Gail testified that her husband was not "that drunk," her testimony was contradicted by the medical examiner, who testified that Henry Brown had a blood alcohol content of .18 at the time of his death.

Gail's statement that the two men were exchanging racial slurs ten minutes prior to the shooting and that she was uncomfortable because she was afraid a fight might break out is new. It conforms more to Sherry Jenkins's description at trial of the atmosphere and Henry Brown's

7

behavior that evening. Sherry testified at trial that Brown was loud, obnoxious and used obscenities, and that she was afraid that a fight might break out. It is worth noting that Sherry did not testify that the two men were exchanging racial slurs. Nor did Sherry impart similar information to Detective Tucker who interviewed her after the murder. (Unsigned Statement of Sherry Jenkins in Union Count Sheriff's Investigative File) Nevertheless, the jury already knew that Henry Brown had taunted Petitioner with a racial slur at least once – right before Petitioner shot him in the back. Gail's affidavit merely indicates that Petitioner also was using racial slurs and that the two men were using them against each other not long before the shooting.

What is critical is that the affidavit's description of the events during the last ten minutes prior to the shooting is consistent with Gail's trial testimony. At trial she testified that for the last ten to fifteen minutes before the shooting, she and Sherry were in the kitchen fixing food, and the two men were in the living room. Her trial testimony and affidavit state that it was quiet in the other room and that she could not hear what was being said between the two men. Sherry also testified that while in the kitchen, she and Gail could not hear what the men were saying.[3] Therefore, the only people who know what happened during those last ten minutes or so before the shooting are Henry Brown and Petitioner. Brown is dead, and Petitioner told police that he shot Brown because he called him a "punk-ass Indian son-of-a-bitch." The jury had no reason to doubt Petitioner, and Gail Hough's affidavit merely adds weight to Petitioner's confession.

The jury was instructed on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. The jury, knowing the two men had been drinking and smoking marijuana and that the victim had used a racial slur against the defendant could

___

[3]The two rooms were separated only by a kitchen bar top.

8

have come back with something less than first-degree murder based on those circumstances. It did not. Nor does this Court believe that there is a reasonable probability that the additional information in Gail's affidavit would have changed the jury's verdict. *See Strickler*, 527 U.S. at 282. In fact, the new information in the affidavit would have allowed the jury to contrast the actions of the two men – both were drinking, both were smoking marijuana, both were using ugly, racial epithets against each other ("nigger" and "punk Indian son-of-a-bitch"), one sat down with his coat over his knees and waited for some food while the other picked up a shotgun and committed a homicide.

Finally, the information in Gail Brown's affidavit would have done nothing to undercut the prosecution's case in aggravation. At sentencing, the jury learned that Petitioner previously had been convicted of killing one man and savagely wounding another in two separate incidents. Additional evidence that Petitioner may have been drunk, stoned and antagonized in this case would not have lessened the jury's perception of his propensity for violence. Based upon the foregoing, the Court will not alter or amend its judgment on this matter.

    *B. Procedural Default and Exhaustion*

Petitioner criticizes the Court's decision to raise the issue of procedural default *sua sponte*, which he argues was unjustified in this case. It is within the discretion of a habeas court to raise the issue of procedural default *sua sponte*, provided the petitioner has been given notice of the court's intent and an opportunity to be heard. *See Yeatts v. Angelone*, 166 F.3d 255, 261-262 (4th Cir. 1999); *Roach v. Angelone*, 176 F.3d 210, 215 n.3 (4th Cir. 1999). This Court notified Petitioner and Respondent of its intent to raise procedural default *sua sponte* and gave both sides an opportunity to be heard on the issue. The Court's reasons for doing so are

9

adequately presented in its January 30, 2007 Order denying habeas relief, and Petitioner has cited no clear error of law warranting alteration or amendment of the Court's judgment under Rule 59(e).

IT IS HEREBY ORDERED THAT,

Petitioner's Motion for a New Trial Pursuant to Rule 59(a) and to Alter or Amend Judgment Pursuant to Rule 59(e) is DENIED [Doc. 82];

Petitioner's Motion to Expand the Record is GRANTED [Doc. 83];

The record shall be expanded to include:

> *Exhibit 1* (Affidavit of Gail Brown) of Petitioner's Motion to Alter or Amend Judgment,
>
> *Exhibit 1* (Affidavit of Special Agent Tony Underwood) of Respondent's Response to Petitioner's Motion to Alter or Amend Judgment
>
> *Exhibit 2* (North Carolina State Bureau of Investigative File Case Number 1995-00920) of Respondent's Response to Petitioner's Motion to Alter or Amend Judgment
>
> *Exhibit 3* (Special Agent Tony Underwood's Case Notes) of Respondent's Response to Petitioner's Motion to Alter or Amend Judgment
>
> *Exhibit 5* (Union County Sheriff's Office Investigative File) of Respondent's Response to Petitioner's Motion to Alter or Amend Judgment; and

Petitioner's Motion for Leave to Conduct Depositions and to Expand the Record is DENIED [Doc. 94].

Signed: June 19, 2007

Graham C. Mullen
United States District Judge